No. 2673

Second Circuit

---

BRADFORD v. MARKS

---

(June 30, 1926. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Fraud—Par. 3.**

Fraud is not presumed. He who alleges it must prove it by legal evidence.
  (Civil Code, Article. 1848.)

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. F. X. Ransdell, Judge.

Action by Jonnie Bradford against George E. Marks, et al.

There was judgment for defendants and plaintiff appealed.

Judgment affirmed.

Murff & Perkins, of Shreveport, attorneys for plaintiff, appellant.

W. B. Massey, of Shreveport, attorney for defendants, appellees.

### STATEMENT OF THE CASE

REYNOLDS, J. This is a suit to reform a notarial act so as to include in it the minerals which, under the terms of the act, are specially reserved from the sale by a clause which reads:

"Except the minerals therein and thereunder, which said minerals in and under all of said property are especially reserved and excepted from this sale."

Plaintiff alleges that the minerals were reserved from the sale through error superinduced by the fraud of defendants, plaintiff's vendors.

Defendants denied that the minerals were excluded from the sale by fraud or error and alleged that they were excluded therefrom by agreement with plaintiff and to his knowledge and with his consent, and they asked for judgment in reconvention against him for $430.00 damages.

On these issues the case was tried and there was judgment rejecting plaintiff's demand and he has appealed. Defendant has not answered the appeal, so the only question now to be decided is whether or not the judgment rejecting plaintiff's demand is correct.

### OPINION

Plaintiff introduced as witnesses himself, his wife, Moise Bagger, Henry Caldwell, Ike Smith, each of whom testified that when the sale was made they heard defendants agree to sell plaintiff the land, minerals and all.

Neither Smith nor Caldwell heard any statement as to the amount that was to be paid.

Plaintiff and his wife and Moise Bagger each testified that defendants agreed to sell the land, minerals and all, for the stipulated price of $1950.00.

Plaintiff introduced as a witness W. E. Glassell, a man of unquestioned veracity and highest integrity, who testified, pages 91 and 92:

"Q. How much were you to pay him for that land?
"A. My agreement was one hundred dollars ($100.00) an acre. The dwelling burned; he was to make an allowance for the house that was burned, which would reduce it to about nineteen hundred and fifty ($1950.00) dollars without the mineral rights.

\* \* \* \*

"Q. Did he say anything to you about wanting to reserve the mineral rights?
"A. Yes, sir.
"Q. Did he say he wanted to reserve the minerals?
"A. One-half of them—I bought the land from him, made a trade at that price, and he was to deliver it to me, and this is the first time I have seen him since about it.
"Q. That was with a reservation of one-half of the minerals?
"A. Yes, sir.

\* \* \* \*

"Q. He agreed to sell you—your trade was, as I understand, nineteen hundred and fifty dollars ($1950.00) for the surface rights and one-half the minerals?
"A. Yes, sir; I didn't value the surface rights as much; it is a bad piece of ground."

Under this evidence of Mr. Glassell's it is hard to accept as true the testimony of plaintiff and his wife and Bagger and Caldwell and Smith, that defendants agreed to sell plaintiff the land, minerals and all, for nineteen hundred and fifty dollars, when Mr. Glassell had already of-

fered them nineteen hundred and fifty dollars for the land and one-half the minerals.

George E. Marks, L. J. Marks and William Marks, sworn as witnesses, each positively denied that either of them ever promised or agreed to sell the mineral rights with the land, and all of them testified that the minerals were specially reserved from the sale.

They are corroborated in their testimony by the fact that the act of sale itself specially excepts the minerals, and they are further corroborated by the testimony of W. B. Williams and W. B. Massey, who prepared the notarial act.

Mr. Williams testified, pages 82, 83, 84:

"Q. Was anything stated at the time about the mineral reservations?

"A. Well, I prepared the first part of the deed and when we got down to the description, and George Marks, you asked me what I had where we had left off, and George Marks spoke about the minerals, about the mineral reservations, and then you asked John Bradford how about it, and if he understood it that way, and John said yes, and at the same time discussed the taxes, and John went on, he says yes he understood it, and went on talking to somebody else.

"Q. The deed was then completed, was it?

"A. Yes, sir.

"Q. Was that deed read back before it was signed?

"A. It was.

* * * *

"Q. Any questions asked or remarks made by Bradford at that time?

"A. The only thing asked, if he understood it and it was perfectly agreeable to everybody."

W. B. Massey testified, pages 87, 88:

"The plaintiff and defendants in this case came to my office, 310 Levy Building, on the date the deed was passed; they stated that they wanted to pass this deed and after getting what I supposed was all the information in connection with it I dictated the deed to Mr. W. B. Williams, who was in the office and who wrote it at the time it was dictated, and when we reached that part of the deed where the description was finished, we added the clause with the buildings and improvements thereon, the defendant George Marks interrupted and said you understand, Mr. Massey, I am reserving the minerals; I told him that I had not understood it up to that time and asked all the parties in there in connection with this deed at the time if that was the understanding, including the plaintiff in this case, John Bradford, and after some few remarks had been made, a little discussion, they all seemed to understand it thoroughly, in fact, said so. And I dictated a clause reserving the minerals to Mr. Williams who wrote it into the deed. When the deed was finished I took the deed myself and read it in a voice sufficiently loud or audible to be heard by everybody in the room; they all seemed to be listening and after some discussion about payment of taxes and so on the deed was executed and the matter was closed. There was no sign of any dissatisfaction on the part of the purchaser or seller; everything seemed to be all right."

Plaintiff's attorney, in an able brief, seeks to convince us that his client is an ignorant and uneducated man and that he has been greatly imposed on.

As a witness plaintiff testified that he did not know the meaning of the word "fraud", but he evidently did not favorably impress the trial judge, who decided the case against him.

The case involves purely a question of fact, and the district judge who heard the witnesses and observed their manner of testifying was in a better position to decide this question than we are.

A careful reading of the evidence in the case does not convince us that the trial court erred, and accordingly the judgment appealed from is affirmed.